NOT FOR PUBLICATION

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Eddie Lee Hatch<br><br>　　　　Defendant. | No. CR-02-01016-PHX-JJT<br>No. CR-14-01305-PHX-JJT<br><br>**ORDER** |

Defendant Hatch filed a Motion to Reduce Sentence or for Early Release—First Step Act (COVID-19). ("Motion," Doc. 47 in Case Number 14-CR-1305; also filed as Doc. 84 in Case Number 02-CR-1016.) The Government filed its response (Doc. 49 in Case Number 14-CR-1305; also filed as Doc. 86 in Case Number 02-CR-1016) in opposition. The Federal Defender filed a Notice of its review of the Motion and subsequent recommendation that there was no basis for appointment of counsel for Defendant, although if the Court concluded differently the Defender stood ready to provide representation. (Doc. 50 in Case Number 14-CR-1305; also filed as Doc. 87 in Case Number 02-CR-1016.) The Court has read and considered all of the above filings.

Defendant is serving a combined 138-month sentence comprised of 87 months for a bank robbery he committed in Case Number 14-CR-1305-PHX-JJT, and a 51-month sentence for violating his supervised release terms in Case Number 02-CR-1016-PHX-JJT. The parties agree that Defendant has served just over 60 percent of his combined sentence on the two matters; his expected release date is July of 2024.

Defendant moves the Court "under the 'CARES Act,' the First Step Act . . . or any other appropriate procedure" for release based on "extraordinary and compelling grounds set forth herein." (Motion at 1.) The Court construes Defendant's Motion as one made pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as modified in the First Step Act of 2020.[1] He alleges that due to his age—60 years—and health condition—he suffers from asthma—he is "at greater risk of catching the COVID-19 virus." (Motion at 3.)

18 U.S.C. §3582(c)(1) allows an inmate to move the Court to reduce his sentence. The statute imposes several requirements before such motion may be granted, however. First, a defendant can only make such motion "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. §3582(c)(1)(A). Second, the Court can grant such relief if it finds "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. §3582(c)(1)(A)(i). Third, the Court must also find Defendant is not a danger to the community. 18 U.S.C. §3582(c)(1)(A).

In the instant case, the first requirement—exhaustion—appears uncontested. Defendant provides copies of his request for First Step Act relief to the warden of FCI-Phoenix; the Bureau of Prisons Notice of denial of that request; a copy of Defendant's administrative appeal of the denial; and the warden's letter upholding the denial. Defendant

---

[1] The Court is without authority to reduce a defendant's sentence under the other Congressional enactments Defendant references in his motion. For example, Defendant identifies the CARES Act as authority for the Court to order relief for him. The Court assumes Defendant refers to Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security (CARES) Act of 2020, Pub. L. No. 116-136, 134 Stat. 281, 516 (2020). To the extent Defendant argues the CARES Act affords the Court any authority to either order home confinement in lieu of imprisonment or to otherwise modify his sentence at this point, his argument has no support in law. As regards criminal sentencing, the CARES Act empowers the United States Bureau of Prisons (BOP) and United States Attorney General Barr to order home confinement. It does not empower Courts to order home confinement, or any other relevant modification.

Moreover, the Court is unaware of any "other appropriate procedure" for it to order Defendant's release mid-sentence, and makes clear that it is not the obligation of the Court to search the law for a means to an end any party seeks. A moving party—even one who is self-represented—has an obligation to identify the basis in law justifying the relief he seeks.

is therefore entitled to a review of his request on its merits. Upon such review, however, the Motion fails.

First, the Court concludes Defendant does not present an "extraordinary and compelling reason" to justify a reduction in sentence. "Congress has delegated authority to the Sentencing Commission to 'describe what should be considered extraordinary and compelling reasons for sentence reduction.'" *United States v. Ebbers*, 432 F.Supp.3d 421, 427 (S.D.N.Y. 2020). This Court thus looks to the United States Sentencing Guidelines ("Guidelines") to determine whether the reduction sought "is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Application Note 1 to Section 1B1.13 of the Guidelines provides that, all other requirements being met, "extraordinary and compelling reasons exist under any of the circumstances set forth below: . . . (A)(i) The defendant is suffering from a terminal illness; . . . (ii) The defendant is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover; . . . (B) The defendant is at least 65 years old; . . . (C) The death or incapacitation of the caregiver of the defendant's minor child or children; or (D) There exists in the defendant's case an extraordinary or compelling reason other than, or in combination with," the above circumstances. U.S.S.G. § 1B1.13 n.1 (2018).

In the present case, Defendant does not attempt to qualify under sections (A), (B) or (C) of Section 1B1.13, note 1, as "extraordinary and compelling." Defendant does not allege he suffers from a terminal illness, or any other illness that has "diminished his ability to provide self-care" while incarcerated at FCI-Phoenix; he is not at least 65 years old; and he does not suggest he has experienced the death or incapacitation of a caregiver to any minor children. The only possible avenue for satisfying the statute's requirements is to show "other extraordinary and compelling reasons" under Note 1 subsection D. This Defendant cannot do.

Demonstration of a concrete, substantial risk of contracting COVID-19, combined

with Defendant's pre-existing condition of asthma, which may put him at greater risk of serious consequences should he contract the virus, might constitute extraordinary and compelling circumstances within the Note's—and thus the statute's—meaning. But Defendant has only presented pure speculation as to his likelihood of future infection. Indeed, as set forth in the government's Response, there were no reported cases of COVID-19 in FCI-Phoenix, where Defendant is serving his sentence. Defendant cites no facts to contradict the government's assertion. This absolute lack of cases, coupled with the steps the Bureau of Prisons has in place to detect, control and minimize the spread of the virus should it enter the facility, is fatal to Defendant's argument. The fact that COVID-19 exists among the community, and the speculation or mere possibility it may reach a given facility, cannot justify release pursuant to Section 3582(c)(1)(A)(i).

Finally, the evidence before the Court will not allow it to conclude that Defendant "is not a danger to the community," as required under Section 3582(c)(1)(A). As noted by the government and in Defendant's latest pre-sentence report, Defendant has sustained at least 10 felony convictions over his lifetime, including for armed robbery and aggravated assault. The supervised release violation for which he is now serving a 51-month sentence stems from an underlying conviction for being a felon in possession of a firearm. That violation occurred only 6 weeks after his supervised release commenced, and it consisted of a bank robbery in which he threatened to shoot a teller. Although Defendant in fact had no gun during the robbery, the teller did not know it, and feared for their life. That robbery constituted the basis for the supervised release violation in Case Number 02-CR-1016 and the new robbery conviction in Case Number 14-CR-1035, for which Defendant is now serving an 87-month sentence. In light of the number of felony convictions, including violent felonies, Defendant has accumulated, and the fact that he was barely out of prison on his last gun charge when he committed another bank robbery by threat of shooting, the Court cannot conclude Defendant is not a danger to the community.

For all the above reasons,

**IT IS ORDERED** in Case Number 14-CR-1305-PHX-JJT, denying Defendant's

Motion to Reduce Sentence or for Early Release—First Step Act (COVID-19) (Doc. 47.)

**IT IS FURTHER ORDERED** in Case Number 02-CR-1016-PHX-JJT, denying Defendant's Motion to Reduce Sentence or for Early Release—First Step Act (COVID-19) (Doc. 84.)

Dated this 24th day of August, 2020.

Honorable John J. Tuchi
United States District Judge